KERR–MURRAY MFG. CO. v. HESS.

(Circuit Court of Appeals, Eighth Circuit. November 20. 1899.)

No. 1,230.

1. CONTINUANCE—DENIAL OF APPLICATION—DISCRETION OF COURT.
   It is not error, even if the ruling were reviewable, to deny an application for continuance on the ground of the illness of a nonresident witness, where there has been ample time for taking his deposition, and the adverse party consents to admit in evidence a statement of the facts to which the witness is expected to testify.

2. MASTER AND SERVANT—INJURY OF SERVANT—FELLOW SERVANTS.
   A servant charged by the master with providing lumber for the building of a scaffolding by his fellow servants is in that respect discharging a personal duty of a master, who is liable for his negligence in providing defective and unsafe material.

3. SAME—ACTION BY SERVANT FOR INJURY—INSTRUCTIONS.
   In an action by a servant against the master to recover for an injury alleged to have been caused by the breaking of an unsound piece of timber furnished by the master for the use of the servants in building a scaffolding, it is not error to refuse an instruction that the defendant would not be liable if he furnished a sufficient quantity of sound lumber, and the unsound piece was inadvertently selected and used by plaintiff's fellow servants, where the defendant pleaded specially that the plaintiff was injured because of the manner in which he conducted himself at the time he was injured, and where it appears that the issue tendered by the instruction was not actually litigated at the trial; the contention at the trial being that he was hurt by his own fault.

4. APPEAL—REVIEW—INSTRUCTIONS.
   The charge of a trial court must be considered as a whole, and cannot be condemned because a single paragraph, taken alone, might be misleading, where its meaning is plain, when read in connection with the other portions of the charge.

   Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action in the trial court by an employé against an employer for personal injuries. In this court the position of the parties is reversed. The Kerr-Murray Manufacturing Company, the defendant below, is the plaintiff in error here, and is seeking to reverse a judgment which was recovered against it at nisi prius. The facts, as disclosed by the record, are substantially as follows: The defendant company is an Indiana corporation, and on November 25, 1897, was engaged in building an iron or steel gas tank in the city of Omaha, Neb. The tank in question was about 90 feet in diameter, and about 26 feet high. For the purpose of constructing the tank, and bolting together the steel plates of which it was composed, it was necessary to erect a scaffolding on the interior of the tank upon which the workmen could stand. The scaffolding was built in the following manner: A box or shaft 4 feet square, consisting of pine plank, was first erected in the center of the tank, extending from the floor to the dome. To this shaft lateral arms, consisting of pine joists or planks 2x10, were nailed, which extended in all directions to the shell of the tank, and were supported at intervals of about 8 or 10 feet by upright posts resting upon the floor of the tank. Walter S. Hess, the plaintiff below and the defendant in error here, was an ordinary laborer

in the employ of the defendant company, and at the date last aforesaid was engaged with some other workmen, under the direction of Henry Loose, the defendant's superintendent or foreman, in constructing the aforesaid scaffolding. In the discharge of his duty he appears to have gone out on one of the joists or arms which radiated from the central shaft for the purpose of splicing another plank or joist to its outer end, and thereby extending the arm towards the shell of the tank. He was sitting astride of the plank some distance from one of the supports, and was nailing the other plank to it, when the plank astride of which he was sitting broke, as he claimed, and precipitated him to the floor some 20 feet below, thereby occasioning the injuries of which he complains. There was testimony offered which tended to show that the plank which broke was neither a sound nor suitable piece of timber, in that it was either sappy and rotten or crossgrained and full of knots.

Ralph W. Breckenridge (Charles J. Greene, on the brief), for plaintiff in error.

V. O. Strickler, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant company complains in the first instance that the trial judge was guilty of a gross abuse of his discretionary power in refusing to grant the defendant a continuance, but this complaint is without any adequate foundation. When the case was called for trial, the defendant's attorney presented an affidavit for a continuance which stated, in substance, that the defendant company could not safely go to trial because John Loose, its most important witness, was sick at his home at Ft. Wayne, Ind. The plaintiff's attorney thereupon consented that counsel for the defendant might make a statement of all the facts which they expected to prove by said Loose, and that such statement might be read to the jury as the testimony which the absent witness would give if present. After this offer was made, the court overruled the application for a continuance. Subsequently, at the conclusion of the defendant's testimony, an affidavit was made by one of its counsel containing a succinct and very full statement of the facts which the defendant company expected to prove by the absent witness, and the same was read to the jury as the evidence which he would give if present in person. Moreover, the case appears to have been pending in the federal court on removal from the state court for nearly nine months before the trial took place. Ample time had elapsed, therefore, to obtain the deposition of the absent witness, which should have been taken, as he appears to have been a nonresident. Under these circumstances, the trial court very properly required the trial to proceed. But, in addition to what has been said, it should be observed that the rule is well established in the federal courts that a motion for a continuance is addressed to the discretion of the trial judge, and that his action on such a motion will not be reviewed on appeal or on writ of error. Davis v. Patrick, 12 U. S. App. 629, 635, 57 Fed. 909, 6 C. C. A. 632; Sims v. Hundley, 6 How. 1, 5, 12 L. Ed. 319; Insurance Co. v. Hodgson, 6 Cranch, 206, 207, 3 L. Ed. 200; Thompson v. Selden, 20 How. 194, 198, 15 L. Ed. 1001; Electric Co. v. Dick, 8 U. S. App. 99, 52 Fed. 379, 3 C. C. A. 149; Drexel v. True, 36 U. S. App. 611, 74 Fed. 12,

20 C. C. A. 265. In the present case, however, we should be compelled to hold that the discretion of the trial court was properly exercised, even if the action complained of was subject to review.

Considerable space is devoted in the briefs to the discussion of the question whether the plaintiff below and Henry Loose, the defendant's superintendent or foreman, were fellow servants; but, as we view the case, the consideration of that question is unnecessary. The action was tried below on the theory that they were fellow servants, and that the defendant could not be held liable for the negligent acts of its foreman unless they were committed while he was discharging some personal duty of the master, such as providing suitable material for the construction of the scaffold or proper tools and appliances wherewith the plaintiff was to work. The charge, considered as a whole, advised the jury that there was no ground upon which a recovery could be had by the plaintiff unless it appeared that the joist or plank which broke and precipitated him to the ground was defective in some of the respects pointed out by the various witnesses who testified on that subject, nor unless it appeared that the defendant had failed to exercise ordinary care in providing such defective material. The charge proceeded upon the theory (which was obviously correct) that whoever may have provided the lumber for the scaffolding was in that respect discharging a personal duty of the master, and that the master was responsible for such person's negligence in providing material, without reference to his grade or rank in the employer's service. Balch y. Haas, 36 U. S. App. 693, 699, 73 Fed. 974, 20 C. C. A. 151.

Complaint is made because the trial court failed to direct a verdict in favor of the defendant company, but as there was considerable testimony (enough, at least, to warrant a finding) that the joist or board which broke was defective in the respect alleged in the petition, and as this joist was a part of the material for the scaffolding which it was the personal duty of the master to supply, it is not apparent that the trial court could have done otherwise than to submit the issue concerning the defendant's negligence in supplying the material to the decision of the jury. The issue in question was submitted, and the finding was against the defendant, under instructions which advised the jury that, in the matter of providing material for the scaffolding, the defendant was only required to exercise ordinary care; and that the plaintiff on his part, when he went out on the plank, was bound to exercise ordinary watchfulness; and that the defendant could not be held liable if the jury believed that the plaintiff might have discovered the defective condition of the board by ordinary circumspection, before he went out on the same and trusted his weight thereto. These were questions for the jury, in view of the character of the evidence, and they seem to have been submitted under directions from the court that were substantially accurate.

Perhaps the most important question in the case, although it is not argued specially in the briefs, is whether the lower court erred in refusing to give an instruction to the effect that if it appeared that the defendant provided a sufficient quantity of sound and suitable lumber for the erection of the scaffolding, and that the selection of the

defective joist which broke and occasioned the injury was the act of some fellow workman of the plaintiff, then there could be no recovery. This instruction embodied a principle which has been approved in a number of decisions, and has passed into some of the text-books. It is held in some cases, with respect to the building of ordinary scaffoldings and other simple structures of that nature, which laborers and mechanics are in the habit of constructing for themselves, because the construction thereof does not require the exercise of more skill or scientific knowledge than is usually possessed by the ordinary laborer or artisan, that the master is under no obligation to do more than to supply a sufficient quantity of material which is reasonably well adapted for the making of such structures, and that he is not responsible for an injury to one of his servants which is occasioned through the fault of another fellow servant, who erects the structure insecurely, or who selects a defective piece of timber and places it therein, when there is an abundance of sound timber at hand which might be selected and used. An allusion was made to this principle, by this court, in a recent case (Manufacturing Co. v. Johnson, 60 U. S. App. 661, 669, 670, 89 Fed. 677, 681, 32 C. C. A. 309), and it has also been recognized by other courts (Colton v. Richards, 123 Mass. 484, 487; Ross v. Walker, 139 Pa. St. 42, 21 Atl. 157, 159; Bowen v. Railway Co., 95 Mo. 268, 277, 8 S. W. 230; Sims v. Barge Co., 56 Minn. 68, 73, 57 N. W. 322; Marsh v. Herman, 47 Minn. 537, 539, 50 N. W. 611; Beesley v. F. W. Wheeler & Co., 103 Mich. 196, 61 N. W. 658, 27 L. R. A. 266; McKinney, Fell. Serv. p. 77; Shear. & R. Neg. [5th Ed.] § 195, and cases there cited).

The case at bar does not seem to have been tried, however, upon the theory that the joist on which Hess was sitting when he fell was defective, and that some fellow workman inadvertently selected and placed it in the scaffold. No such defense was pleaded in the defendant's answer, which contained simply a general denial of the allegation that it had furnished rotten and defective materials for the construction of the scaffolding, and in addition thereto a special plea that the plaintiff's injuries were occasioned by his own fault, "by the manner in which he conducted himself at the time of the receipt of said injuries," and that, if he had exercised reasonable care, he would not have been hurt. The proof introduced was in accordance with these allegations of the answer. The defendant called but two witnesses, one of them being its own attorney, and the other an alleged eyewitness of the accident. By the latter witness it showed, in substance, that the joist on which Hess was sitting was entirely sound, and did not break, but that it remained in the scaffolding as a constituent part of the structure after the accident, and that in point of fact Hess lost his balance, and fell accidentally, while attempting unnecessarily to catch a small piece that had split off from the end of the joist on which he was sitting, as he was driving a nail. This was the defense upon which the defendant appears to have placed its chief reliance before the jury. A section, as it was claimed, of the very piece of timber on which the plaintiff was sitting when he fell, was produced in court, and identified by one of the defendant's attorneys as being a piece of the alleged defective joist that had been pointed

out to him shortly after the accident, and which he had directed to be sawed off and preserved, so as to establish on the trial that it was sound and suitable for the scaffolding, and that the claim that it was rotten or otherwise defective was a mere pretense. In its charge to the jury the court pointed out the issue of fact aforesaid, which seems to have been the one that had been discussed by counsel, and directed the jury to determine whether the joist broke because of its rotten condition, as the plaintiff claimed, or whether, the joist being sound, the plaintiff fell through sheer accident, while attempting to do an unnecessary act, namely, catch a piece of falling timber, as the defendant had contended. Inasmuch as the issue last stated was the one actually litigated before the jury, and as the defendant neither pleaded that the accident was due to the fault of a fellow servant nor admitted that the joist might have been unsound, and inasmuch as it did not show how much material it had bought for the scaffolding, or what care it had exercised in selecting it, we are of opinion that the judgment below ought not to be disturbed because of the failure to give the aforesaid instruction. In the case in hand, the instruction does not appear to have been pertinent to the defenses outlined in the answer, nor to the proof which was offered in support thereof. The court was justified, we think, in submitting the case to the jury on the issues that had been tried and specifically pleaded.

It is further insisted that an error was committed by the trial court in instructing the jury as follows:

"It has been stated by counsel here frequently that the law is that the defendant was bound to furnish safe materials. Now, that is not the law, that they are bound to furnish absolutely safe materials. The law is that the defendant was bound to use ordinary care to furnish reasonably safe materials. They were not insurers absolutely of the safety of any timber that the plaintiff had to work upon, but they must use such care as an ordinarily careful and prudent man would use under similar circumstances. *If you should find, gentlemen of the jury, from a fair preponderance of all the evidence in this case, that it was the duty of the plaintiff in this case to go out upon this plank, and that it was necessary for him to do that in order for him to properly fasten these two planks together, and that he went out upon that plank in the performance of his duty, and while there, performing his duty, it broke and let him fall to the ground without any fault of his, and through some defect in the plank as described in the testimony, then it would be your duty to find a verdict in behalf of the plaintiff for such damages as you might find from all the evidence the plaintiff was entitled to.*"

That part of the instruction which we have italicized is criticised by the defendant's counsel, upon the ground that it withdrew from the jury the question whether the defendant had been guilty of culpable negligence in furnishing defective material, and simply required them to ascertain whether the plank was rotten, without reference to the degree of care that had been exercised in providing it. When the whole paragraph which is above quoted and other parts of the charge are read, however, it is obvious, we think, that the criticism in question is without merit. The court plainly informed the jury that in the matter of providing materials the defendant was only bound to exercise ordinary care; that it was not an insurer of the safety of any of the materials which it had provided; and, by necessary intendment, that the defendant could only be held liable for a failure to

exercise an ordinary degree of care in that respect. The concluding paragraph of the instruction, when read in connection with what precedes it, manifestly did not leave the jury at liberty to find against the defendant if they were simply satisfied that the joist was defective, but it required that they should be further satisfied that the defendant had not exercised reasonable or ordinary care in providing it. The meaning of an instruction should be determined by considering it as a whole, since many a charge which, as a whole, is unexceptionable, would prove faulty if appellate courts indulged in the practice of wresting a paragraph from its context, and condemning it without reference to what precedes or follows it. Railway Co. v. James, 12 U. S. App. 482, 487, 6 C. C. A. 217, 56 Fed. 1001; Railroad Co. v. Gladmon, 15 Wall. 401, 409, 21 L. Ed. 114. We cannot act on the presumption that the jury were misled by the instruction in question, when it appears that they were twice advised by the court in unmistakable terms that the defendant company had discharged its full duty to the plaintiff, in the matter of providing materials for the scaffolding, if it simply exercised ordinary care in selecting them. The judgment below should be affirmed, and it is so ordered.

SANBORN, Circuit Judge (dissenting). The opinion of the majority concedes the law to be that if a master furnishes an abundance of sound material for the construction of a scaffold, and some of his employés who are engaged in constructing it select and use a rotten or defective stick or plank, and thereby cause the injury of one of their number, the master is not liable. Fraser v. Lumber Co., 45 Minn. 235, 237, 47 N. W. 785; Lindvall v. Woods, 41 Minn. 212, 215, 42 N. W. 1020, 4 L. R. A. 793; Hoar v. Merritt, 62 Mich. 386, 29 N. W. 15; Killea v. Faxon, 125 Mass. 485. The plaintiff in error requested the court below to give this law to the jury, and it refused. In my opinion, this was a fatal error in the trial of this case, for which the judgment should be reversed. because the bill of exceptions shows that the manufacturing company produced testimony "that the rafters upon which the floor of said scaffolding was laid were first-class, clean pine planks, two inches wide, free from defects, and proper for use in the construction of said scaffolding, and that there was a great sufficiency of such timber, first class and perfect in every way, from which the selections could be and were made, and that said timber was selected by the said John Loose and other workmen who were working with Hess in constructing said scaffold," and prayed for the proper instruction thereon. It is true that one of the defenses which the manufacturing company made was that the plank on which Hess was at work was not defective, and did not break; but it is not less true that another defense was that it furnished a sufficient amount of sound and suitable lumber for the construction of the scaffold, and was guilty of no negligence, even if the plank was defective and did break. The fact that, in the opinion of the jury, it failed in the first defense, in no way deprived it of its right to the benefit of the second; and the testimony quoted above, and the request for a correct statement of the law upon it, show that the

plaintiff in error did not fail to insist upon it.   Moreover, the burden
of proof to show the negligence of the master was on the plaintiff
below.   The fact that he or his fellow workmen put a defective plank
in the scaffolding, which broke and precipitated him to the floor, was
not sufficient to establish that negligence, without proof that the mas-
ter failed to furnish sound and suitable plank, which the workmen
might have used, and on this ground the plaintiff in error was enti-
tled to the instruction it requested.

There is another reason why this judgment ought to be reversed.
It is that after telling the jury that the company was not an insurer
of the safety of the materials, but was only required to use ordinary
care to furnish safe lumber, the court erroneously charged the jury:

"If you should find, gentlemen of the jury, from a fair preponderance of all
the evidence in this case, that it was the duty of the plaintiff in this case to
go out upon this plank, and that it was necessary for him to do that, in order
for him to properly fasten these two planks together, and that he went out on
that plank in the performance of his duty, and while there performing his duty
it broke, and let him fall to the ground, without any fault of his, and through
some defect in the plank as described in the testimony, then it would be your
duty to find a verdict in behalf of the plaintiff for such damages as you might
find from all the evidence the plaintiff was entitled to."

In my opinion, this charge took from the jury the questions wheth-
er or not the manufacturing company was negligent in the discharge
of its duty, and whether or not the selection of the defective plank
was the negligence of the plaintiff's fellow workmen, and left them
nothing to consider but whether or not it was the duty of Hess to
go out on the plank, and whether or not it broke without his fault.
It was certainly a positive direction to return a verdict for the plain-
tiff if he went out on the plank in the performance of his duty, and,
without his fault, it broke and precipitated him to the ground, and
by its very terms it excluded the consideration of any other question.
It seems to me that a jury could not have understood it in any other
way.   I concede that a paragraph of a charge should not be wrested
from its context, and condemned, without reference to what precedes
or follows it, and that all parts of the charge relative to the subject
under discussion should be considered together.   But general re-
marks, which tend to show that the court had correct views of the
law, do not extract the vice of an erroneous instruction, which is
positive in its terms, and which directs the jury to render a verdict
if the conceded facts exist, without considering the vital issues in the
case.   Railway Co. v. Needham, 52 Fed. 371, 378, 3 C. C. A. 129, 147,
10 U. S. App. 339, 350; Railway Co. v. Farr, 56 Fed. 994, 1000, 6
C. C. A. 211, 217, 12 U. S. App. 520, 529.   This, it seems to me, was
the effect of this charge.   It was a general statement to the jury
that the defendant was required to use ordinary care to furnish rea-
sonably safe material, and a positive instruction to them to return
a verdict against it, whether it used any care or not, if the plaintiff
went out on the plank, and it broke, and let him fall to the ground,
without his fault; and this seems to me to be error.